# In re S-A-, Applicant

*Decided November 25, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An applicant's general assertion that he was prevented from reaching his hearing on time by heavy traffic does not constitute reasonable cause that would warrant reopening of his in absentia exclusion proceedings.

FOR THE APPLICANT: Candace L. Jean, Esquire

BEFORE: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Dissenting Opinions: SCHMIDT, Chairman; ROSENBERG, Board Member.

HURWITZ, Board Member:

In a decision dated December 5, 1995, the Immigration Judge found the applicant excludable as charged and ordered him excluded and deported from the United States. The decision was rendered following a hearing held in absentia due to the applicant's failure to appear. The applicant filed two motions to reopen with the Immigration Judge, both of which were denied. The applicant appeals from the denial of his second motion to reopen on August 26, 1996. The appeal will be dismissed.

It is well established that an alien must show reasonable cause for his absence in order for exclusion proceedings to be reopened after a hearing is held in absentia. *See Matter of Ruiz*, 20 I&N Dec. 91 (BIA 1989); *Matter of Haim,* 19 I&N Dec. 641 (BIA 1988). In his first motion to reopen, the applicant asserted that he was late to his hearing because of heavy traffic between Fort Myer, Florida, where he lives, and the hearing location in Miami. The Immigration Judge found that the applicant's claim of traffic problems did not amount to reasonable cause.[1]

---

[1] The Immigration Judge also found in his January 18, 1996, decision that heavy traffic did not constitute exceptional circumstances, which would be required to reopen an in absentia deportation hearing. *See Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1996). The applicant was not required to show exceptional circumstances to reopen his exclusion proceedings. However, this finding by the Immigration Judge is harmless error because he also found no reasonable cause.

In his second motion to reopen, the applicant stated that he never received notice of his December 5, 1995, hearing. In his August 26, 1996, decision the Immigration Judge noted that he had previously found no reasonable cause for the applicant's absence on the basis of heavy traffic. The Immigration Judge stated that the applicant had proffered an inconsistent, alternative basis for his second motion to reopen, which was also factually incorrect because the applicant had received notice of the hearing. On appeal, the applicant relies only on the traffic situation raised in his first motion to excuse his absence. He explains that the second motion to reopen was prepared by a notary and did not contain accurate information.

The applicant has provided an affidavit dated September 19, 1996, in which he states: "[T]he traffic was very bad that morning, and I arrived at Immigration Court shortly after 9:00 a.m." According to the applicant's first motion to reopen, he arrived at the Immigration Court approximately 20 minutes late. However, his hearing was set for 8:30 a.m.; thus, the applicant's arrival at the Immigration Court appears to have been more than 30 minutes late.

The applicant's affidavit contains the general assertion that traffic prevented him from reaching his hearing on time. There is no detail that would enable us to meaningfully evaluate his claim. He did not provide a time of departure to indicate how much time he allocated for travel to the Immigration Court. There is no information as to the location of the heavy traffic or any reason for the apparently unexpected level of traffic. The applicant did not state what efforts he made upon reaching the Immigration Court to alert court personnel that he had arrived and was available for his hearing. *See Thomas v. INS,* 976 F.2d 786 (1st Cir. 1992) (finding that the reasonable cause standard was not satisfied when the alien appeared late for the hearing because the alien and his attorney "crossed signals" about where to meet).

The applicant's credibility is in doubt. He has filed two motions with inconsistent reasons for his absence, for which he has not presented a persuasive, corroborated reason. He has misstated the time of arrival at the Immigration Court. He has not provided any evidence or facts beyond his statement that traffic was heavy. He did not claim to have attempted to alert anyone at the Immigration Court as to his predicament upon his arrival. Under these circumstances, we are satisfied that the Immigration Judge correctly determined that the applicant failed to establish reasonable cause for his absence from the hearing. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

*DISSENTING OPINION*: Paul W. Schmidt, Chairman

I respectfully dissent.

On appeal from the denial of his motion to reopen in absentia exclusion proceedings, the applicant has submitted an affidavit stating that the

information furnished in support of his earlier motion to reopen on notice grounds was not authorized by him. I would not reject this contention and find the applicant, in effect, incredible by reason of inconsistent statements without giving him an opportunity for an evidentiary hearing on the truth of his contention that he did not authorize the inconsistent representations contained in his earlier motion. *Cf. Arrieta v. INS*, 117 F.3d 429 (9th Cir. 1997) (finding remand appropriate to give the respondent an opportunity to provide evidentiary support for statements made in an affidavit accompanying a motion to reopen).

In his first motion to reopen and on appeal, the applicant, who lives a distance of several hours from the Immigration Court, claims that he was 20-30 minutes late for his hearing because of traffic congestion. If this were in fact the case, the interests of justice and the statutory purpose of providing fair hearings to aliens before removing them from the United States would have been better served by the Immigration Judge exercising his available discretion to hear the case at another time during the day. *See Romano-Morales v. INS*, 25 F.3d 125 (2d Cir. 1994)(stating that rules regarding in absentia hearings should be carefully applied to avoid conflict with statutory or constitutional rights); *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996) (stating that notwithstanding rules governing in absentia hearings, an Immigration Judge retains authority to excuse presence, grant a continuance, or change venue). I am not necessarily convinced that every incidence of tardiness must be treated as an "absence" from the hearing.

I therefore dissent from the decision to dismiss the applicant's appeal.

## DISSENTING OPINION: Lory D. Rosenberg, Board Member

I respectfully dissent.

The Immigration Judge and this Board should be conducting hearings, not curtailing them. Although appearance at scheduled hearings and reduction of a crowded docket are desirable from an administrative and a public policy perspective, the way to achieve such a goal is not by denying an applicant, charged with being excludable from the United States, the hearing that is contemplated by the statute, when he comes forward with a reasonable explanation for appearing late for a scheduled hearing. *See* section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226 (1994); *see also* section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994) (addressing the equivalent to due process rights of notice and an opportunity to be heard in the deportation context); 8 C.F.R. § 236.2 (1997) (addressing the equivalent to due process rights of notice and an opportunity to be heard in the exclusion hearing context).

The contradiction between the protected right to a hearing and an increased interest in "expediting" such proceedings is particularly clear, where, as here, the subject of the hearing has not absconded or disappeared, but comes before us, virtually imploring us to provide him with such a

hearing. Although a hearing is not barred by any statutory standard, the majority denies the applicant a hearing on grounds reliant on an exclusively administrative interpretation of what constitutes a failure to appear and reasonable cause for such a failure to appear. Such a denial is not only arguably abusive of our discretion, but factually contrary to standards we have pronounced in our precedents.

## I. THE "REASONABLE CAUSE" STANDARD AND LATE ARRIVAL

This is not a case in which the applicant literally failed to appear for his hearing. It is a case in which the applicant appeared, but appeared late. The applicant, who came to court in Miami from his residence in Ft. Myers, literally across the southern part of the state of Florida, contends he arrived "shortly after 9 a.m." as the result of "bad traffic." He also stated that he arrived approximately 20 minutes late.

Aha! So says the majority, computing the mathematics. The hearing was at 8:30; thus, by admitting he arrived shortly after 9:00 a.m, the applicant conceded that he was not 20 minutes late, but at least 30 minutes late.

In *Matter of Ruiz*, 20 I&N Dec. 91 (BIA 1989), cited by the majority, we held that when the basis for a motion to reopen is that an Immigration Judge held an in absentia hearing, "the alien must establish that he has *reasonable cause* for his absence from the proceedings. Section 242(b) of the Act, 8 U.S.C. § 1252(b) (1982) (deportation proceedings). If the alien has reasonable cause for his failure to appear, the motion will be granted . . . ." *Id.* at 92-93 (emphasis added) (citations omitted); *see also Matter of Haim*, 19 I&N Dec. 641 (BIA 1988).

The standard of "reasonable cause" applicable in exclusion proceedings is derived from section 242(b) of the Act, which sets forth statutory standards of fundamental fairness to be observed in deportation proceedings. This standard is distinct, and far less demanding, than is the standard of "exceptional circumstances" which must be satisfied by a respondent in deportation proceedings who has been found deportable and ordered deported in a hearing conducted in absentia. *Cf*. section 242B(c) of the Act, 8 U.S.C. § 1252b(c) (1994). In *Matter of Ruiz, supra*, the "reasonable cause" standard was referred to interchangeably as a "valid excuse." *Id*. at 92, 93 (referring to an excuse of illness).

Here, the applicant's "valid excuse"—*not for failure to appear, but for tardiness*—is that his tardiness was caused by traffic problems. It is not unreasonable that an individual traveling from west to east across the entire state of Florida to Miami might have encountered particularly heavy traffic. Even if the cross-state traffic itself was not an impediment, it is reasonable to believe that the traffic encountered once the applicant reached the city limits of Miami during morning rush hour delayed his timely arrival at his hearing.

Traffic problems may not be found to constitute "exceptional circumstances" in cases adjudicated under section 242B of the Act. As noted, however, the "exceptional circumstances" standard is not the standard applicable to this case. Traffic problems, asserted by an individual who appeared, albeit late, and who is seeking a hearing, should constitute a "valid excuse" and establish "reasonable cause." *Cf. Matter of Ruiz, supra* (accepting illness as a "valid excuse" without any indication that there was more particular or detailed evidence presented).

## II. EXPLICIT STANDARDS ARTICULATED FOR ESTABLISHING "REASONABLE CAUSE" IN TRAFFIC AND OTHER CASES

The majority dismisses the respondent's explanation on several grounds. As noted above, I find the majority decision to be a deviation from our existing precedent. We are entitled, however, to modify or overrule our own prior precedent, and it is appropriate that we inform the parties and the public of the standard we apply currently, by publishing a representative decision as a precedent indicating our adoption of a new or more specific standard. 8 C.F.R. § 3.1(g) (1997).

Apparently, in this case, which should be understood to be representative of the majority's views in similar cases, the majority concludes either that the applicant's explanation is not reasonable, or that the applicant has not met his burden of proof in setting forth a reasonable explanation for his tardiness. Applicants faced with current absences for which an explanation amounting to "reasonable cause" might exist, as well as applicants with appeals currently pending before us are well advised to heed these bases for dismissal. It is not only what the majority says, but what they do not say that must be understood.

*First*, the majority opines, "there is no *detail*" to "meaningfully evaluate his claim," including evidence of (a) the time of the applicant's departure; (b) the time he allocated to reach the court from his starting point; (c) the location of the bad traffic encountered; and (d) the reason for the bad traffic encountered. In other words, an applicant should prepare an affidavit, corroborated by supporting affidavits from family or neighbors about when his car left the driveway, preferably supported by documentary information or corroborating affidavits from local news media, such as morning radio traffic correspondents, or state or local police, verifying the traffic tie-up and explaining the reason, such as road construction, accident, or whatever else might have impeded a timely arrival. An extremely cautious applicant might wish also to provide the make, model, and mileage of his car, the status of his or her gas tank, and a copy of the most recent receipt for car maintenance.

*Second*, there was no evidence provided concerning "*what efforts*" he made when he did arrive to "alert court personnel." Although the majority

appears to object only to the absence of evidence of what efforts the applicant may have made when he did arrive at the court, one should anticipate that mere recitation of such efforts will not be found adequate in subsequent cases.

In other words, an applicant should not merely explain what happened when he or she arrived at the court or went up to the window in the waiting area of the courtroom. He or she should note specifically the time at which he or she approached the window, referring to any clock on the wall, as well as a personal timepiece. He or she should describe with specificity and attention to appearance, physical characteristics, and formal title, who was the first person contacted upon his or her arrival in the waiting area, e.g., an individual in a business suit who appeared to be a lawyer, an individual in a guard's uniform attending to others awaiting a hearing, another person appearing to be of the same nationality, another person who appeared able to understand a language other than English. Next, the applicant should state whether there was an individual present at the court clerk's window, whether he or she approached this person (and if he or she did not approach this person, why he or she did not do so), and what conversation occurred—that is, what information was provided by the applicant and what information or instruction was given by the court clerk.

Next, the applicant should note how he or she was treated in these encounters, i.e., was he or she ignored, told it was too late, told to sit down and wait, or told to go to another courtroom or another federal building? The applicant should also state what he or she did in response to this treatment. Finally, if the applicant had any direct encounter with the Immigration Judge, he or she should describe what happened and relate any conversation that took place.

All of this information should be submitted in the form of a sworn and notarized affidavit; if possible, this information should be corroborated, meaning that another person present at the scene should verify the events that happened, using the same type of detailed description. Taking notes at the same time as these events occur also is a useful way to insure that the circumstances are remembered as they actually occurred. Ideally, the applicant might even ask the court clerk or Immigration Judge to initial her notes concerning what took place. If notes were not taken, then writing down the applicant's best memory of these events at the earliest possible opportunity, such as when the applicant first receives an in absentia order in the mail or first meets with an attorney or accredited representative, is desirable.

The most effective explanation will be one in which a third party—a person other than the applicant—verifies, in writing, the explanation provided by the applicant concerning what happened when he or she arrived at court. Therefore, it is always desirable to obtain a written statement from anyone who was present or who participated in an exchange with the applicant. In order to accomplish this, the applicant should obtain a name, address, and telephone number from anyone present with whom he or she speaks or who

observed the applicant's interaction with the court clerk or the Immigration Judge. If possible, it would be advantageous to return to the court room and check with the court clerk concerning what occurred; in addition it would be helpful to contact anyone else present in the courtroom waiting area to verify the applicant's memory of his or her actions and the responses he or she received.

*Third*, the majority emphasizes that the applicant's *credibility* is compromised by his having filed two motions containing different explanations for his absence. It is critical that any inconsistency is explained convincingly. The applicant explained that his second motion to reopen was prepared by a notary and did not contain accurate information.

It is undisputed that both the benevolent and the mercenary intrusion of "notaries" or unaccredited "immigration consultants" into proceedings affecting an individual's status in the United States is improper, unauthorized, and, unfortunately most often, harmful. An applicant's lack of understanding or poor judgment in resorting to such an individual for supposed "assistance" in an immigration matter is not an offense, however. Certainly, the applicant who may be victimized in such a case is not the offender.

The second motion to reopen filed in this case stated only that the applicant had not received notice of his hearing. A notary's use of this likely "canned" motion on the applicant's behalf in no way undermines the factual assertions made by the applicant concerning his traffic problems. At worst, it indicates that the applicant was so desperate to obtain a hearing and present his case, that he appealed to an individual who took advantage of him and acted to his disadvantage. The applicant's initial claim of traffic problems was never abandoned, and he has reasserted it on appeal.

Although the applicant provided a reasonable explanation for the inconsistency in these two motions, the majority finds that he "has not provided a persuasive, corroborated reason for doing so." The majority bolsters its conclusion that the applicant's credibility is in doubt by emphasizing its conclusion that the applicant "*misstated* the time of arrival at the Immigration Court." Stating that one arrived 20 minutes late and shortly after 9:00 a.m. is hardly an offense as serious as that suggested by a pejorative reference to the disparity in the applicant's mathematics: 8:50 a.m. or 9:05 a.m.—30-something minutes instead of 20.

It is difficult to discern how one might establish credibility to the satisfaction of the majority in such a situation. One critical guideline might be never, ever, to assert a second reason for a failure to appear on time that was not included in an initial statement, unless there is a compelling and exhaustively documented explanation for adding such a reason. Such an explanation should be in writing, accompanied perhaps by a thorough report from a professional such as a psychiatrist or other physician, an attorney, or state bar counsel, indicating why the applicant didn't provide all of the information contributing to the cause of his or her absence at the outset, or why the reason

for an untimely appearance was altered or added in the context of a second motion.

In all cases, it is critical that any allegations that such errors resulted from ineffective prior counsel, including errors made by that attorney's staff, are substantiated according to the requirements we have set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988). This means that the agreement with this counsel must be set forth, that the applicant must notify the offending counsel who must be allowed an opportunity to respond to the applicant's grievance, and that the grievance must be filed with the local bar authorities.

## III.  REOPENING OR REMAND IS WARRANTED

Although it may appear that I am being facetious or positing an absurd extreme in some of the extrapolations I have made concerning the quantity and quality of evidence one should anticipate will be required by the majority to reopen a hearing conducted in absentia, even where an applicant appears in court within an hour of the scheduled hearing time on the appointed date, I am deadly serious. The right to a hearing and an opportunity to be heard is among the most precious rights enjoyed in a democracy such as ours. It should not be sacrificed inadvertently because of lack of representation, poor representation, or underestimation of the requirements necessary to secure such a right.

In the instant case, I agree fully with the dissenting opinion of Chairman Paul W. Schmidt, that the applicant, at the very least, should be given an opportunity to further explain his tardiness according to the criteria previously unarticulated and only now set forth by the majority. We are empowered to determine appeals in such a way as to exercise our authority in a manner that is appropriate and necessary to resolve the case. 8 C.F.R. § 3.1(d); *see also Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996). In the alternative, based on the law as it has existed and been interpreted prior to our issuing the instant decision, I would find the applicant to have presented a "valid excuse" establishing reasonable cause for his lateness. As I indicated at the beginning of my dissent, no rational interest is served by foreclosing this applicant's opportunity for a full and fair hearing, and, regrettably, by denying him one, I fear we undermine the democratic priorities that should guide our function.