# In re J-P-, Respondent

*Decided May 20, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An alien failed to establish that a serious headache he suffered on the day of his deportation hearing amounted to exceptional circumstances to excuse his failure to appear within the meaning of section 242B(f)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(f)(2)(1994), where he gave no explanation for neglecting to contact the Immigration Court on the day of the hearing and did not support his claim with medical records or other evidence, such as affidavits by persons with knowledge regarding the extent and seriousness of the alien's headache and the remedies he used to treat it.

Pro se

Edward S. Reisman, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEIL-MAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, GUENDELS-BERGER, and JONES, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

HURWITZ, Board Member:

In a decision dated January 6, 1997, the Immigration Judge denied the respondent's motion to reopen his deportation proceedings conducted in absentia on July 29, 1996, pursuant to section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994). The respondent appeals from the Immigration Judge's decision. The appeal will be dismissed.

The issue before us is whether the respondent has established that exceptional circumstances, namely a strong headache, caused his failure to appear at his deportation hearing.

In support of his motion to reopen, the respondent submitted a signed declaration stating that on July 28, 1996, 1 day before his missed hearing, he developed strong pain in his head. According to his statement, the pain caused him to be bedridden for 2 days. Thus, he was unable to attend his hearing.

In his January 6, 1997, decision, the Immigration Judge found that the

respondent failed to establish that exceptional circumstances caused his failure to appear because he did not submit a doctor's note, or a hospital or medical record in support of his motion. In response to the Immigration Judge's finding, the respondent argues on appeal that he did not submit such documentation because he was unable to afford professional medical treatment. He indicates that he treated his headache with home remedies.

An order issued following proceedings conducted in absentia pursuant to section 242B(c) of the Act may be rescinded only upon a motion to reopen which demonstrates that the alien failed to appear because of exceptional circumstances, because he did not receive proper notice of the hearing, or because he was in Federal or State custody and failed to appear through no fault of his own. Section 242B(c)(3) of the Act; *see also Sharma v. INS*, 89 F.3d 545 (9th Cir. 1996); *Matter of Gonzalez-Lopez*, 20 I&N Dec. 644 (BIA 1993). The term "exceptional circumstances" refers to exceptional circumstances beyond the control of the alien, such as serious illness of the alien or death of an immediate relative, but not including less compelling circumstances. Section 242B(f)(2) of the Act.

We find that the respondent has failed to establish that exceptional circumstances caused his failure to appear at his deportation hearing. *Id.* Generally, a common headache would not rise to the level of a serious illness and thus would not constitute exceptional circumstances within the meaning of the Act. Assuming that a serious headache can amount to exceptional circumstances, the respondent has failed to bring forth sufficient evidence to demonstrate that his headache falls into this category. The signed statement the respondent submitted in support of his motion to reopen only contains the following description regarding his headache: "On July 28, 1996, I developed a strong pain in my head and cranium, that caused [me] to remain in bed for the next two days."

This perfunctory statement contains no detail regarding the cause, severity, or treatment of the alleged illness. Such a conclusory statement is insufficient to meet the high standard established by Congress for a showing of exceptional circumstances. *See* section 242B(f)(2) of the Act.

The respondent also failed to establish his burden of proving exceptional circumstances because his motion to reopen was unsupported by medical or other records. As discussed above, the Immigration Judge found that the respondent's failure to submit medical records in support of his motion was, in itself, dispositive of his claim. We are not prepared to reach this conclusion based on the evidence of record, including the respondent's assertion on appeal that he treated his headache with home remedies because he could not afford medical treatment. However, we do find the lack of medical evidence or other evidence establishing, in detail, the seriousness of the respondent's illness to be one of several factors leading to our finding that the respondent failed to meet his burden. We find that if the respondent, indeed, treated his headache with home remedies, he could

34

have supported his motion with an affidavit or another form of evidence from a medical professional describing the specific home remedies he used and their effectiveness in treating headaches. A medical professional might also have commented, in detail, on the severity of the illness alleged. In the alternative, his claim may have been substantiated, through detailed affidavits from the respondent, roommates, friends, and co-workers, attesting to the extent of his disability and the remedies used. None of these possible forms of evidence are in this record.

We find that the respondent's bare statement that he could not afford medical care does not excuse his failure to provide medical evidence to support his claim of exceptional circumstances. In particular, there is no evidence in the record that free or low cost emergency medical care was unavailable to the respondent in his area of residence at the time of his scheduled hearing.

Moreover, the record does not contain any evidence that the respondent was employed at the time of his scheduled hearing. While we cannot consider work absence in the context of the current case, we find that any evidence of absence from work due to an illness would normally bolster a respondent's claim that the illness is serious and that it constitutes exceptional circumstances.

We also find that the respondent's failure to contact the Immigration Court on the day of his hearing further undercuts his claim. *See De Morales v. INS*, 116 F.3d 145 (5th Cir. 1997). In *De Morales* the petitioners alleged that they missed their deportation hearing due to automobile failure. They stated that on the day of their missed hearing they tried to locate the telephone number of the San Antonio Immigration Court but were unable to find it, either in the San Antonio telephone directory or in their Notice of Hearing. Thus, they failed to contact the Immigration Court on the day of their deportation hearing to inform the Immigration Judge of their inability to attend their hearing and to explain the reason for their absence. The United States Court of Appeals for the Fifth Circuit found that the petitioners failed to "make adequate efforts to avoid entrance of the in absentia order" through their "cursory search for the phone number." *Id.* at 149.[1] The respondent did not indicate that he made any effort to contact the Immigration Court on the day of his deportation hearing to alert the Immigration Judge of his absence and to explain the reasons for it. Giving such notice of one's unavailability is a minimal and logical step that, if not taken, is a factor which tends to undermine a claim of exceptional circumstances

We do not discount the fact that the respondent had 180 days from

---

[1]Although the case at bar does not fall within the jurisdiction of the Fifth Circuit, we find the analysis in *De Morales v. INS, supra*, to be particularly instructive to our discussion of the respondent's failure to contact the Immigration Court.

the time of his missed hearing to seek reopening based on exceptional circumstances. *See* section 242B(c)(3)(A) of the Act. However, his failure to contact the Immigration Court on the day of his hearing, either personally or otherwise, coupled with his failure to explain his reasons for neglecting to do so, demonstrates that the respondent lacked sufficient diligence in avoiding an in absentia deportation order. Although diligence is not a statutory requirement, we find that this lack of diligence is a factor that undercuts the respondent's claim, given the totality of the record before us, including the lack of medical or other evidence to support his claim of exceptional circumstances. *See* H.R. Conf. Rep. No. 101-955, at 119, 132 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797 (instructing the Attorney General to look at the totality of the circumstances to determine whether an alien's failure to appear was justifiable),

For the foregoing reasons, we find that the respondent has failed to meet his burden of establishing that exceptional circumstances caused his failure to appear at his deportation hearing.[2]  Thus, he does not merit reopening. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

Board Members Edward R. Grant and Lori L. Scialabba did not participate in the decision in this case.

*DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I respectfully dissent.

The issue before the Board is not whether a "strong headache," debilitating the respondent and causing him to be bedridden for 2 days, is sufficient to establish "exceptional circumstances" under section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994), so that the order of deportation against him may be rescinded and he may have the benefit of having a hearing on the charges against him and an opportunity to seek relief from deportation from the United States.

The issue is whether, according to the test announced by the majority, this unrepresented respondent has met his evidentiary burden of proving "exceptional circumstances" by submitting a personally signed declaration in which he moves to reopen his  hearing on the grounds that he had a serious headache, and that poverty, lack of access to free medical care, and

---

[2] Contrary to the dissent's view that we are adding requirements and criteria to the statute, the Board is, in fact, applying the established statutory standard of exceptional circumstances which is defined in some detail at section 242B(f)(2) of the Act.

36

the use of over- the-counter or home remedies (1) kept him from seeking professional or emergency medical help for his headache, and (2) prevented him from obtaining such expert medical evidence to support his motion. And, if he has not met his burden under standards we articulate for the first time today, what is the proper disposition of his motion?

On appeal, the respondent argues that he applied for political asylum before the Immigration and Naturalization Service and that his application was denied and referred to the Immigration Court, together with an Order To Show Cause and Notice of Hearing (Form I-221) that indicated he was to appear before the Immigration Judge on July 29, 1996. He states that he became ill on July 28, 1996, and that his illness was serious enough "to keep him from attending what he understood as being a very important hearing." He argues that the opinion of the Immigration Judge, denying his motion to reopen for a lack of documentary evidence such as a doctor's note or a hospital record "discriminates against a class of people who can not afford professional medical attention," and that requiring a "simple Doctor's note as oppose [sic] to the merits of the case misses the point for which Due Process rights exists [sic]." He contends that "it is inconceivable that his right to appear in from [sic] of an immigration court should be contingent on his obtaining proof of that which he can't afford, i.e., medical attention, instead of his sworn statement."

## I. SUFFICIENCY OF A HEADACHE AND NEW EVIDENTIARY REQUIREMENTS

The majority rejects the respondent's contention that his 2-day debilitating illness constituted an exceptional circumstance. The reasons it gives for this conclusion are, because he made a "perfunctory statement," and because he did not provide detail as to the cause, severity, or treatment of the "alleged illness." I beg to differ.

The respondent addressed the severity of his headache — he stated that his headache was severe enough to keep him in bed for 2 days. In addition, the respondent addressed how he treated his headache — he stated that he could not afford traditional United States medical care and took home remedies in an effort to alleviate his pain. As for the cause of his headache, I doubt that the respondent or even a panel of western-educated medical doctors could pinpoint or agree on the cause of such a headache.

### A. Treatment of a Serious Headache

Although the majority states that "a *common* headache" would not constitute a serious illness sufficient to trigger the "exceptional circumstances" exception to an in absentia deportation order, it acknowledges that *whether*

37

*a headache might cause such a serious illness is an individual matter.* Having experienced serious headaches, including those referred to as migraines, I agree.

In essence, however, the majority rejects the respondent's motion because it contends that he has failed to meet evidentiary standards that would establish his headache to be one of the "serious" ones. These evidentiary rules are found nowhere in the statute, nor are they articulated in any regulation or in prior case law of this Board. They require:

(1)  the submission of medical "or other" records (although I note that the majority expressly rejects the exclusive basis on which the Immigration Judge dismissed the motion for lack of medical records); and

(2)  the submission of evidence, including an affidavit or other form of evidence of an illness and the treatment of it with home remedies, *from a medical professional* attesting to the fact that the respondent did, in fact, treat his headache with home remedies.

The majority suggests that this corroborating information from a medical professional *should* contain a medical judgment on the effectiveness of the home medications taken, and possibly *could* contain a commentary "*in detail*, on the severity of the illness alleged." *Matter of J-P-*, 21 I&N Dec. 33, at 35 (BIA 1998) (emphasis added).

So, the majority will not simply uphold the disposition of an Immigration Judge that an individual who presents no medical records or expert testimony concerning his headache *must be denied* reopening of a hearing conducted in absentia. Nevertheless, reading the majority opinion, submission of such evidence certainly seems advisable, if not mandatory. Although the majority does not demand that any person seeking exemption from imposition of the "in absentia" bar to a hearing (in which he is present and may offer his defenses or applications for relief from removal), actually make an appointment with a medical doctor *to treat* his illness, that individual certainly is well advised to see a medical professional, *after the fact* of his illness, *to corroborate* how he treated himself, when he could not afford to visit a medical professional to treat him in the first place. In my view, such a requirement is patently unreasonable.

The majority "suggests" three other important points. In my view these points should also be considered mandates, although they are nowhere required by statute or regulation.

The first requirement is the corroboration rule. As an alternative to a medical exam, based on the majority's ruling that the respondent's claim "may have been substantiated," it appears that "*detailed* affidavits" from the respondent's roommates, friends, and co-workers, attesting to the extent of his "disability" and the "remedies used," might suffice. *Matter*

*of J-P-, supra*, at 35. (emphasis added); *cf. Matter of S-A-*, 21 I&N Dec. 1050 (BIA 1997) (Rosenberg, dissenting),

In satisfying this requirement, it would be prudent for the respondent to have roommates, friends, and associates who are literate, and who also can attest to their own immigration status. It would also be helpful (a) for the respondent's affiant to know the details of the respondent's illness and the remedies he used, and (b) for the respondent and his affiant to have access to a notary public who can certify the signatures on these affidavits. Of course, this presumes that the respondent must have the presence of mind, openness, and persuasiveness to convince his roommates, friends, and associates — who must be able to articulate the particulars of the respondent's illness — to assist him in satisfying these requirements.

A second requirement is the medical opinion rule. The respondent must provide evidence that there was nowhere he could obtain low-cost or free emergency care, because his "bare statement" that he could not afford such care "does not excuse his failure to present medical evidence." *Matter of J-P-*, *supra*, at 35. So, the respondent should go to all of the low cost medical providers in the area and explain to them that because he had no insurance, or felt precluded from doing so for religious reasons, or felt a doctor could not help him, or thought an over-the-counter remedy would suffice, or preferred a home remedy, he did not seek medical care when he was sick, but that he now needs a detailed statement from them assessing the past symptoms described, and certifying that they would or would not have been able to provide medical care for his illness.

The third requirement is the excused absence rule. The majority thinks it reasonable to expect that the respondent, if employed, would have been absent from work, and also would be able to approach his employer for some confirmation of his absence due to illness. Although it is not unreasonable that a short-term debilitating illness keeping the respondent from attending court also would have resulted in absence from work, the majority, without thinking that the respondent may not have revealed his immigration problems to his family, friends, employer, or associates, now has imposed the need for the respondent to approach them, reveal his dilemma to them, and ask for their assistance in verifying his illness for submission to the Immigration Court.

Finally, in addition, there is the "calling requirement" and the "diligence requirement." The majority opines that the respondent did not contact the Immigration Court and that doing so is a "minimal and logical step" that, if not taken, "undermines" the respondent's claim of exceptional circumstances. *Matter of J-P-*, *supra*, at 35. The majority states that it finds the decision of the United States Court of Appeals for the Fifth Circuit, relying in part on the respondents' not having called the Immigration Court when their car broke down, to "undercut" the respondent's claim. *See De Morales v. INS*, 116 F.3d 145 (5th Cir. 1997).

I note that, at a minimum, calling the Immigration Court is another new rule not articulated in the statute or in any regulation promulgated by the Attorney General. Although the majority does not appear to recognize it, there is an obvious difference between a "calling" requirement when one is on the road on the way to court and when one is confined to bed with a debilitating illness. Under the circumstances of poverty, alleged here, there may even be a question of whether the respondent had a telephone or, under the circumstances of his illness, reasonable or ready access to one. Another consideration is whether the respondent had access to someone who could call for him. Furthermore, I doubt that, as a practical matter, the Office of the Chief Immigration Judge is prepared to record such calls with the accuracy that would be required were we to invoke such a requirement as an essential element of veracity testing. *Cf. Matter of Villalba*, 21 I&N Dec. 842 (BIA 1997) (Rosenberg, dissenting),

In any event, this appeal arises in the jurisdiction of the United States Court of Appeals for the Ninth Circuit.[3] In *Arrieta v. INS*, 117 F.3d 429, 432 (9th Cir. 1997), the court stated:

> It is important to note, however, that when an alien is seeking to reopen deportation proceedings on the ground of lack of notice of the deportation hearing, *the Grijalva presumption requires the IJ and BIA to consider the evidence submitted by an alien* which supports the defense of nondelivery or improper delivery of the notice. *Here, the BIA erred when it refused to examine Arrieta's evidence based on its belief that letters are not substantial and probative evidence.* The record indicates that Arrieta certified to the truth of her letter, and *when she submitted it to the IJ, Grijalva had not yet been decided and there was no established standard of the proof required before the BIA for Arrieta to follow.*

(Emphasis added)(citation omitted).

Although the failure to appear in the matter before us does not involve a claim of inadequate notice, but that of exceptional circumstances, each is a basis on which an individual ordered deported in the course of an in absentia hearing may establish the propriety of rescission of the order and reopening of the hearing according to the statute. *See* section 242B(c) of the Act. The essence of the ruling of the Ninth Circuit in *Arrieta v. INS, supra,* is that our decision in *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995),

---

[3] Only recently, the Board majority was quite eager to invoke the fact that a cited case occurred out of circuit to reject the reasoning of the Ninth Circuit Court of Appeals when it favored granting an administrative appeal by a respondent. *Cf. Matter of A-E-M-*, 21 I&N Dec. 1157 (BIA 1998), Not so, apparently, as I noted in my dissent in that case, when such citation cuts against the decision of the majority and, in particular, when the out-of-circuit decision supports a denial of relief. *Cf. id.* (Rosenberg, dissenting) (addressing the majority's disapproval of out-of-circuit citations),

requires consideration of sworn statements of the respondent concerning his reasons for failure to appear.[4] The essence of the ruling of the Ninth Circuit in *Arrieta v. INS, supra*, is that our decision in *Matter of Grijalva, supra,* requires consideration of sworn statements, and suggests that a sworn statement from the respondent, as appears to have been provided here, should support an affirmative defense to failure to appear. *Id.*

Then, there is the new "diligence requirement." This rule supposedly recognizes the statutory limit of 180 days for filing of a motion to reopen, but modifies it by the requirement of diligence, meaning that the motion must be filed immediately following the injury or impediment preventing the respondent's appearance. The majority claims this factor is permissible and warranted in the context of Congress' expression of intent that the foreclosure of a hearing be based on a "totality of the circumstances." While immediate filing of a motion to reopen based on exceptional circumstances may be enhanced by an early filing of such a motion, the way in which the majority invokes this consideration suggests, I believe, inappropriately, that such an early filing is necessary before the motion will be considered credible, notwithstanding the 180-day statutory period.

### B. Prior Notice of Requirements as a Measure of Fairness

The respondent provided a sworn statement concerning the disability that prevented him from appearing on the appointed hearing date. At the time he did so, he was not on notice that more — such as a doctor's detailed statement, or a statement explaining the lack of one, was required of him. The Ninth Circuit has recognized that being put on notice of the requirements we are going to impose is essential to fairness. *Arrieta v. INS, supra*. In addition, the majority now imposes the new requirements that the respondent contact the Immigration Court and quickly file his motion under section 242B(c)(3) or be considered a slacker, who will be treated adversely as a matter of the "totality of the circumstances."

In my view, without regard to whether a serious headache is an exceptional circumstance, the majority's evidentiary requirements impose an excessively high test on a noncitizen who fell ill, and who provided a sworn statement, albeit perfunctory, concerning his illness, explaining why he did not seek traditional western medical treatment. Nevertheless, even assum-

---

[4]In that precedent, we stated unequivocally that the presumption of effective service may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service. To support such an affirmative defense, the respondent must present substantial and probative evidence such as documentary evidence from the Postal Service, *third party affidavits,* or *other similar evidence* demonstrating that there was improper delivery or that nondelivery was not due to the respondent's failure to provide an address where he could receive mail. *Matter of Grijalva, supra.*

ing that a doctor's note regarding medical treatment or an explanation for the lack of it, or other corroborating documentation, is a reasonable requirement, a critical issue is how the Board should go about announcing such evidentiary requirements in deportation and removal hearings. This question raises issues of constitutional proportions. *See Blancada v. Turnage*, 891 F.2d 688 (9th Cir. 1989),

I differ with the majority's imposition of these criteria on the respondent for many of the reasons stated in my dissenting opinion in *Matter of Villalba, supra*, in which I emphasized that the protections of due process extend to respondents in deportation proceedings, who are entitled to notice of our requirements.[3] *See also Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988) (holding that administrative expediency must give way to protection of fundamental rights).[4]

Furthermore, I would have thought that a decision like this one could not have been issued following our issuance of *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996), in which we recognized an Immigration Judge's — and our own — discretionary authority to take into consideration the circumstances of the individual applicant. In this case, the circumstances are that the respondent is unrepresented, and even if he were represented, he has not been put on any notice that the Board would hold him to evidentiary requirements articulated specifically for the first time in his own case. *Cf. United States v. Gasca-Kraft*, 522 F.2d 149, 152 (9th Cir. 1975) (finding that "due process requires that the respondent in a deportation hearing receive timely notice; that he have an opportunity to be heard, . . . and to produce evidence").

I note that section 242(b) of the Act, 8 U.S.C. § 1252(b)(1994), remained in the statute when section 242B was first introduced and that it

---

[3]Deportation proceedings involve the potential deprivation of a significant liberty interest and must be conducted according to the principles of fundamental fairness and substantial justice. *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Bridges v. Wixon*, 326 U.S. 135, 154 (1945)("Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."); *see also Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982); *Matter of G-*, 20 I&N Dec. 764, 780 (BIA 1993) (citing *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952)); *Matter of Ching*, 12 I&N Dec. 710, 712 (BIA 1968) (citing *Wong Yang Sung v. McGrath*, 339 U.S. 33 (1950)),

[4]Neither the statutory language nor the legislative history supports an interpretation that renders section 242B(c)(1) of the Act more a penalty provision than a deliberate measure to achieve prompt determinations and closure in the cases of deportable aliens. The overriding objective of Congress in enacting section 545 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-67, was to bring aliens to their hearings, and the legislative history does not contain a punitive intent. *See generally* Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75 (1993) (stating that S.358, a later Conference Committee report, incorporated certain previously excluded enforcement provisions to ensure that aliens were properly notified and in fact would appear for their hearings).

is applicable to the respondent's case. The statute provides that deportation shall be determined only on a record made in a proceeding "before a special inquiry officer" and that a respondent is to be provided a "reasonable opportunity to be present." Section 242(b) of the Act;[5] *see also Purba v. INS*, 884 F.2d 516, 517-18 (9th Cir. 1989) (holding that the statutory language of section 242(b), combined with the significance of credibility determinations in deportation matters, supports a bright-line rule requiring physical presence before the Immigration Judge); *Maldonado-Perez v. INS*, 865 F.2d 328, 333 (D.C. Cir. 1989) (holding that the Act implements constitutional requirements of a fair hearing).

In *Sharma v. INS*, 89 F.3d 545, 548 (9th Cir. 1996), the Ninth Circuit noted:

> It is unclear why Congress left the "reasonable cause" language in section 1252 intact. *Romero-Morales v. INS*, 25 F.3d 125, 128-29 (2d Cir. 1994), We do not hold that Congress intended the language in section 242B to repeal the language in section 1252; in fact, we normally presume against such an interpretation. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) ("It is, of course, a cardinal principle of statutory construction that repeals by implication are not favored.").[6]

These principles favor a remand of the instant case rather than an outright dismissal. If the majority wishes to demand that the respondent, who states that he could not afford a doctor and elected to take home remedies, document his case by (1) making an appointment with a doctor who can corroborate that his illness was serious and that he treated his illness in this way by election or for want of a physician he could afford, or, in the alternative (2) providing a statement that he could not access free or state-covered health care, and (3) obtaining sworn statements from friends, family, and employers that he was so debilitated, at the very least, he should be afforded an opportunity to do so *before* they adjudicate the merits of whether "exceptional circumstances" exist.

### C. Evaluation of the Evidence of Record

A deportation or removal hearing involves an individual's potential separation from family, home, co-workers, and, often, his or her very safety and security. The respondent, who has indicated that he is seeking asylum,

---

[5]While section 242B contains specific provisions allowing an Immigration Judge to conduct a deportation proceeding in absentia, and different standards for excusing a failure to appear, the "reasonable opportunity to be present" under section 242(b) continues in force.

[6]The Ninth Circuit concluded: "Because we find Petitioners' situation fits squarely within section 242B, we need not address whether section 1252(b)'s 'reasonable cause' standard applies in other cases."

should not be denied his day in court unless absolutely mandated or voluntarily waived. This Board has long acknowledged that ready dismissal of a respondent's claims on technicalities will not do. *See Matter of Martinez-Solis*, 14 I&N Dec. 93, 95 (BIA 1972) (holding that a contested deportation hearing is a "quest for truth," not a sporting event); *Matter of K-H-C-*, 5 I&N Dec. 312, 314 (BIA 1953).

The burden of proof normally imposed in civil deportation proceedings, when not otherwise specified by statute, is that of a preponderance of the evidence. Where the evidence demonstrates that the facts asserted — missing a hearing because of a serious debilitating headache treated with over-the-counter remedies because poverty and the lack of other meaningful treatment mitigated against the reasonableness of a doctor's visit — are likely to be true and have not been rebutted or controverted by any adverse evidence, this should be accepted as proof of a serious headache that made it impossible for the respondent to attend his hearing.

The question, then, is the one the Board evades — whether a "strong headache" such as the one the respondent experienced *does* constitute "exceptional circumstances." The only part of the record that addresses the evidence is the Immigration Judge's conclusion, rejected by the majority, that the absence of medical records verifying the illness is a sufficient basis, alone, on which to reject the claim of a serious illness. In addition, the respondent had no notice of the evidentiary requirements the majority now imposes. Under these circumstances, I believe that remand, and not dismissal, of his appeal is the fair or proper resolution.

## II. THERE IS NO STATUTORY OR REGULATORY BAR TO CONSIDERATION OF THE RESPONDENT'S ASYLUM CLAIM

The respondent's appeal cannot be decided in a vacuum. His supposed failure to appear must be decided within the framework of the other statutory provisions pertaining to entry of in absentia deportation orders and the applicable constitutional due process protections. Even if, under the majority's new rules, he has lost his opportunity to be present and to answer the charges of deportability lodged against him, his case should be treated, at a minimum, consistently with the terms of the statute.

The statutory notice provisions of section 242B of the Act and corresponding regulations are distinct from the regulatory provisions at 8 C.F.R. § 3.2 (1997), which address motions to reopen to seek relief from deportation. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (holding that a construction of the statutory language which takes into account the design of the statute as a whole is preferred); *see also Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561 (1989) (holding that "whole statute" interpretation dictates that statutory sections should

44

be read in harmony to achieve a harmonious whole); *Matter of W-F-, supra* (Rosenberg, concurring and dissenting).

Section 242B(e) of the Act has five pertinent subsections which relate to (1) failure to appear at a deportation proceeding (section 242B(e)(1)); (2) failure to depart under a grant of voluntary departure (section 242B(e)(2)); (3) failure to appear under a deportation order (section 242B(e)(3)); (4) failure to appear for an asylum hearing (section 242B(e)(4)); and (5) the relief covered for failure to appear for a hearing under section 242B(e)(1) (section 242B(e)(5)), Subsections (e)(2), (3), and (4) of the Act — involving the failure to depart voluntarily, the failure to appear when a deportation order has issued, and the failure to appear for an asylum hearing — state in language that is plain, clear, and unequivocal, that before these consequences may be imposed for nonappearance or noncompliance, the respondent *must* be warned orally and in writing of the consequences.

There is no evidence that the respondent ever received the oral warning that the statute requires. *See* section 242B(e)(1) of the Act; *see also* sections 242B(e)(2)-(4) of the Act; *cf.* section 242B(a) of the Act (requiring only written, but not oral, notice). Congress spent a significant amount of time expressly considering the legislative goals related to the provisions that govern in absentia deportation orders as applied to the question of deportability per se, and the impact on eligibility to apply for discretionary relief, as well as for asylum and withholding of deportation. *See supra* note 4. These particular provisions do not represent a last minute enactment, nor is their language equivocal or ambiguous. *See INS v. Cardoza-Fonseca*, 521 U.S. 320 (1987); *see also Lindh v. Murphy*, 117 S. Ct. 2059 (1997) (reaffirming, in a unanimous decision that upholds the presumption against retroactive application of statutes, the principle of statutory construction that requires language included in one section of a statute and excluded in another to be given different meaning and practical effect).

Even had the respondent been given the proper oral warnings concerning the potential for forfeiture of the right to present claims for certain forms of relief in lieu of deportation, that is not the end of the matter, however, as the record indicates that he is an asylum applicant. Although the statute precludes certain forms of discretionary relief for 5 years when the respondent has been given proper oral and written notice of the requirement to appear for a hearing or for any other obligatory purpose addressed in the statute, these preclusions do not apply across the board. *Compare* section 242B(e)(1) (referring to oral and written notice required under section 242B(a)(2)) *and* section 242B(e)(4)(B) (referring to oral and written notice of an asylum hearing). In the event of a respondent's failure to appear for a hearing, the forms of relief precluded after entry of an in absentia order cover voluntary departure, suspension of deportation, and adjustment of status, including registry. *See* section

242B(e)(5) of the Act. Nowhere does the statute bar consideration of or granting an application for asylum, nor should it.[7]

Denial of reopening of proceedings before an Immigration Judge to have an asylum hearing is not one of the consequences listed in section 242B(e)(5) that is triggered by failure to appear for a deportation proceeding. The imposition of a bar to reopening of a hearing either to schedule or to reschedule or reconvene an asylum hearing is not authorized by the statute. Furthermore, denial of reopening to apply for asylum is not a consequence of failure to appear even for an asylum hearing under section 242B(e)(4) of the Act. *See* Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75 (1993) (recognizing that Congress intended to afford asylum-seekers enhanced protection), Consideration of the treatment of access to an asylum hearing before an Immigration Judge in the final bill, which was enacted as section 242B of the Act, reveals the special treatment afforded asylum-seekers.[8]

The language of the sections of the statute before us is plain, and it reflects substantive distinctions between the mandate to order deportation in the face of an unexcused failure to appear for a hearing in response to proper notice and the imposition of attendant consequences which attach to certain phases of the hearing and certain forms of relief from deportation. *See Lindh v. Murphy*, 521 U.S. 320 (1997) (emphasizing that language included in one section of a statute and excluded in another is to be given different meaning and effect), If a successful motion to *rescind* an in absentia

---

[7]A failure to appear which is excused under any of the three bases contained in section 242B(c)(3) results in rescission of the deportation order and reconvening the proceedings for purposes of determining both deportability and eligibility for asylum or any form of discretionary relief. A failure to appear for a hearing in which written notice was properly given and not excused, *but in which oral notice was not properly given or in which the form of relief sought is not covered in section 242B(e)(5)* may result in reopening of the proceedings for purposes of entertaining any applications for relief from deportation. *See* 8 C.F.R. § 3.2 (1997) (governing motions to reopen generally), At a minimum, a *motion to reopen* for the purpose of applying for asylum or certain forms of discretionary relief from deportation may be filed and granted in a case conducted in absentia, as long as the relief sought is not expressly precluded by the terms of the statute. Such a motion shall not be granted *unless* the evidence offered "is material and . . . could not have been presented" at the former hearing, and if it appears that the "right to apply for such relief was [not] fully explained to [the movant] and *an opportunity to apply therefore [sic] was [not] afforded*," and relief is warranted in the exercise of discretion. 8 C.F.R. § 3.2(c)(1) (emphasis added).

[8]The conference committee incorporated the 5-year bar to all forms of relief originally contained in the Morrison bill, but dropped asylum from the list of relief barred. Notably, the original GAO draft had permanently barred all forms of relief for 5 years following a nonappearance. See H.R. 4300, 101st Cong. § 402(a)(3)(E)(iv)(1990) (original Morrison bill), The Smith bill, H.R. 5284, 101st Cong. § 4(b) (1990), and the Brooks bill did not meaningfully affect eligible asylum-seekers. H.R. Rep. No. 101-681 (1990).

finding of deportability under section 242B(c)(3) were interpreted as preliminary to reopening to accept an asylum application and/or hear an asylum claim, section 242B(e)(4) of the Act would be rendered surplusage. *Id.* at 124. In addition, I note that both Congress and this Board have recognized our international obligations not to return individuals whose life would be threatened or endangered in their home country. *Matter of Q-T-M-T-*, 21 I&N Dec. 639 (BIA 1996); *see also id,* (Rosenberg, dissenting).

The record reflects that the respondent is an asylum-seeker who submitted an application to the Service that was referred to the Immigration Court.[9] Under these circumstances, I cannot agree that the respondent should be prevented from presenting his asylum claim before the Immigration Judge. *See* section 242B(e)(4)(B) of the Act.[10] Foreclosing him from the opportunity for such a hearing raises serious questions concerning our violation of the statute, as well as the possible violation of our international obligations not to return individuals to their country of origin when they have contended that they have suffered or would face imminent persecution there.

## III. CONCLUSION

As I have stated previously in a related context, the Immigration Judge and this Board should be conducting hearings, not curtailing them. *See Matter of S-A-, supra* (Rosenberg, dissenting), The enactment of section 242B of the Act did not and could not change the fundamental constitutional protections attendant to deportation or removal proceedings. As I

---

[9] Lest there be any question, the issue of the respondent's being an asylum applicant has been raised before the Board, and a court of appeals would have jurisdiction to review legal claims arising from our adjudication. *See Urbina-Osejo v. INS,* 124 F.3d 1314, 1317 (9th Cir. 1997) (finding jurisdiction in a claim raised under section 242B where Urbina raised the issue of the change of address requirement, the Service neither challenged nor contradicted the evidence, notwithstanding the fact that the Board did not address the issue of lack of knowledge of the requirement in its decision); *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994) (holding that the exhaustion requirement will not apply where, as here, there is a constitutional challenge to the Immigration and Naturalization Act or procedures of the Immigration and Naturalization Service); *Castillo-Villagra v. INS*, 972 F.2d 1017, 1024 (9th Cir. 1992) (finding that the petitioners did not bypass the Service, the Service bypassed them and stating that "exhaustion of administrative remedies by a motion to reopen may be required as a matter of prudence in order to develop a proper record, prevent deliberate bypass of the administrative scheme, and allow the agency to correct its own mistakes"); *Montes v. Thornburgh*, 919 F.2d 531, 537 (9th Cir. 1990).

[10] I note in this regard that, in fact, the 180-day from order of deportation time limitation which applies to motions to rescind for exceptional circumstances is conspicuously absent from the statutory language in section 242B(e)(4) of the Act, which talks of exceptional circumstances with no mention of a time limit.

47

stated in *Matter of S-A-*, *supra*, although ensuring a respondent's attendance at scheduled hearings and reducing a crowded docket are reasonable goals, desirable from an administrative and a public policy perspective, the way to achieve these goals is not by denying an applicant his hearing when he comes forward with an explanation capable of constituting "exceptional circumstances" for his absence.

In this appeal, the majority determined to deny the motion and to designate it as a precedent, when the proper course would have been, assuming the majority's requirements to be proper ones, to remand the case. I do not condone unsubstantiated excuses asserted only to avoid deportation and removal hearings. But I believe that the requirements we impose interpreting and implementing the statute should be reasonable, and that we should impose these requirements only after giving fair notice of what we require. Fair consideration should be given to motions submitted according to known standards, not newly articulated ones.

In addition, we must give all of the statutory provisions meaning. In fact, as it appears the respondent has filed only a motion to rescind under section 242B(c)(3) of the Act, I see no reason he could not now file, within 90 days of the date of this decision, a motion to reopen to seek asylum under the terms of 8 C.F.R. § 3.2, stating his reasons for not applying previously and complying in all ways with the regulation. As the Supreme Court has noted, "[A] myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). The same can be said about the right to a hearing before an Immigration Judge on the allegations and charges in the Order to Show Cause, and the opportunity to apply for asylum or other relief from deportation. I would remand the respondent's motion to allow him an opportunity to meet the criteria articulated today by the Board and to allow the Immigration Judge to consider his motion under these new standards.