**Ambizah YWEIL, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–1498.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 1, 2002.

Decided Nov. 7, 2002.

Before Hon. JOHN L. COFFEY, Hon. KENNETH F. RIPPLE, and Hon. MICHAEL S. KANNE, Circuit Judges.

### ORDER

Ambizah Yweil, a native of Iraq, was deported *in absentia* for having failed to attend a scheduled asylum hearing. In her motion to reopen, she claimed that her absence was due to a severe migraine headache, which, as an "exceptional circumstance," warranted rescission of the deportation order. The Immigration Judge ("IJ") denied her motion, concluding that Yweil's headache was not a "serious illness," and therefore did not qualify as an exceptional circumstance under section 240(b)(5)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229a(b)(5)(C). Yweil's subsequent administrative appeal to the Board of Immigration Appeals ("BIA") was dismissed. She asks us to review that dismissal.

### I.  FACTUAL BACKGROUND

Yweil was scheduled to appear at an asylum hearing on the morning of November 19, 1997. She had been notified by letter that, barring exceptional circumstances, she had to be there or face depor-

tation. "Exceptional circumstances," the notice informed her, included serious illness.

On the evening before the hearing, Yweil became ill. In an affidavit supporting her motion to reopen, she described the illness as follows: "I frequently suffer from migraine headaches which disable me for a period of time. I became extremely weak, lightheaded, and began to vomit." In an affidavit of his own, her brother corroborated her account: "On the night of November 18, 1997, I was with her when she became ill. Ambizah suffers from severe migraine headaches particularly during stressful times." Her brother continued: "She informed me that her court date was November 19, [1997,] at 9:00 a.m. Realizing that she would be unable to function in court, I attempted to call her attorney, but was unable to do so as no one was present in the office at the time (approximately 8:00 p.m.)."

The next morning, the brother "took Ambizah to her doctor, Dr. Aref Senno . . . who examined her." Meanwhile, the brother explained, "I attempted to contact the immigration court but was unable to do so, as the clerk who answered informed me that I must call an 800 number. I did so and found that such number was only a recording." Yweil's account was similar: "I attempted, in every manner I could at the time, to have my attorney . . . and the immigration court, contacted and informed of my condition. Unfortunately, no one was able to do [so]."

In her motion to reopen, Yweil explained that she had missed the meeting because of her headache. Noting that she had made several unsuccessful attempts to contact her lawyer and the immigration court, she argued that her condition constituted an exceptional circumstance warranting a reopening of her case. She supported her claim with affidavits from herself and from her brother, a note from her physician, and explanatory materials generally documenting the severity of migraine headaches. The note from her doctor stated: "Ms. Ambizah Yweil is under my care, patient came in my office on November [sic] 19, 1997 complaining of migraine headache, and fever. The patient is excused not to attend the court date on 11–19–97."

The IJ denied Yweil's motion, refusing to find that her illness was an exceptional circumstance. He noted that she had not sought medical attention immediately, but had waited until the morning of the hearing to be taken to her doctor. "Given that the illness did not warrant immediate emergency medical attention," the IJ reasoned, "the court can not find that this illness was an 'exceptional circumstance' beyond the alien's control as required by the [INA]." The IJ was also unswayed by Yweil's unsuccessful and repeated efforts to communicate with the court, concluding that she "had time to arrange such a communication as the headache manifested during the evening of November 18." Noting her brother's attempts to telephone the court, the IJ suggested that, "[c]onsidering the stakes, it is not unreasonable to expect an in person communication from the brother."

The BIA affirmed the IJ's decision in a short per curiam order, noting only that "[t]he record indicates that [Yweil] received proper notice of the hearing and has failed to demonstrate exceptional circumstances for the nonappearance. . . ."

## II. DISCUSSION

We review the denial of a motion to reopen a deportation order entered *in absentia* for abuse of discretion. *See Ursachi v. INS*, 296 F.3d 592, 594 (7th Cir. 2002). Because the BIA in this case af-

firmed the IJ's decision without presenting any substantial analysis of its own, we review the IJ's decision. *Id.*

Section 240 of the INA, 8 U.S.C. § 1229a, as amended in 1996, defines "exceptional circumstances" as "exceptional circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) beyond the control of the alien." The phrase "serious illness" is itself not defined. The BIA has, however, suggested several ways in which a claim of serious illness can be documented: "A medical professional might ... comment[ ], in detail, on the severity of the illness alleged. In the alternative, [such a] claim may [be] substantiated, through detailed affidavits from [the alien himself], roommates, friends, and co-workers, attesting to the extent of his disabilities and the remedies used." *In re J–P–*, 22 I. & N. Dec. 33, 1998 WL 299471 (BIA 1998).

In her motion to reopen, Yweil provided the immigration court with affidavits from herself and from her brother concerning her migraine headache, along with a report from the doctor who examined her on the day of her hearing. The doctor's report made clear that in his opinion Yweil was not in condition to attend a hearing that morning. Taken together, the affidavits and the doctor's report demonstrate that Yweil was indeed ill, and that her illness would certainly interfere with her ability to make intelligent responses to any questions that might be asked of her at the hearing. We are convinced that Yweil's migraine headache falls within the parameters of "exceptional circumstances."

We recognize that a finding of exceptional circumstances is to be based on the totality of the circumstances. *See* H.R. Conf. Rep. No. 101–955, at 119, 132 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6797.

For that reason, we are troubled in this case by the summary way in which the IJ denied Yweil's motion. His decision was based on only two countervailing factors: Yweil's failure to seek emergency medical treatment the night before her hearing, and her brother's failure to make an in-person appearance to inform the immigration court of his sister's illness. We do not understand how either of these factors, or the combination of the two, is sufficient to undermine Yweil's claim of exceptional circumstances. Although a person may suffer from a serious headache, it would be highly unusual for that person to go to the emergency room at the headache's onset before even attempting any milder remedies, such as painkillers or simple rest. As for the brother, given that he was busy that morning taking his sister to the doctor, he cannot reasonably have been expected simultaneously to appear at the immigration court. We expect and require from the IJ a more complete justification than this if we are to uphold the denial of a motion to reopen based on exceptional circumstances.

## III. CONCLUSION

Based on the totality of the information presented, it is clear to us that Yweil's migraine headache was an "exceptional circumstance ... beyond [her] control." We believe that the IJ should have granted her motion to reopen, and that his failure to do so was an abuse of discretion. We therefore GRANT Yweil's petition, VACATE her deportation order, and REMAND the case for further proceedings consistent with this opinion.